Filed 12/9/21  Premier Health Partners v. EGO CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| PREMIER HEALTH PARTNERS, INC. et al., <br><br>     Cross-Defendants and Appellants, <br><br>     v. <br><br> EGO, INC., <br><br>     Cross-Complainant and Respondent. | B309628 <br><br> (Los Angeles County Super. Ct. No. 20STCV11326) |

APPEAL from orders of the Superior Court of Los Angeles County, Patricia D. Nieto, Judge.  Affirmed.

Venable, Alex M. Weingarten, Matthew M. Gurvitz, and Bryan J. Weintrop, for Cross-Defendant and Appellant Premier Health Partners, Inc.

O'Hagan Meyer, Samuel Y. Edgerton, III and Johnny L. Antwiler for Cross-Defendant and Appellant Anthony Cardillo, M.D.

Hahn & Hahn, D. Jason Lyon and Todd R. Moore for Cross-Complainant and Respondent.

---

## I. INTRODUCTION

Cross-complainant EGO, Inc., dba Brault (EGO), filed a cross-complaint against cross-defendants Premier Health Partners, Inc. (Premier) and Dr. Anthony Cardillo alleging various causes of action. In response, Premier and Cardillo filed special motions to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court denied the motions, finding that EGO's claims did not arise from protected petitioning activity. Premier and Castillo appeal. We affirm.

## II. BACKGROUND

A. *The Parties' Business Relationship*

Premier was a company that managed emergency medicine departments. Cardillo was Premier's president and chief executive officer (CEO). He was also the chief financial officer

---

[1] Further statutory references are to the Code of Civil Procedure.

"A 'SLAPP' is a '"strategic lawsuit against public participation"' [citation], and special motions to strike under section 425.16 are commonly referred to as '[a]nti-SLAPP motions' [citation]." (*Bonni v. St. John Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).)

(CFO) and managing partner of Glendale Adventist Emergency Physicians, Inc. (Glendale Adventist), another company that managed emergency medicine departments.  EGO was a company that provided medical billing and insurance reimbursement services for medical facilities, including those managed by Premier and Glendale Adventist.

On April 20, 2014, EGO entered into a written agreement with Glendale Adventist, in which EGO agreed, for compensation, to perform certain services at Glendale Adventist (the Glendale Adventist billing services agreement).

On January 1, 2016, EGO entered into a written agreement with Premier, in which EGO agreed, for compensation, to perform services at several emergency departments that Premier managed (the Premier billing services agreement).  That agreement included a paragraph that defined certain information as confidential (Confidential Information), and provide that a party in receipt of Confidential Information "shall not use the Confidential Information . . . for any purpose whatsoever, except as contemplated under this Agreement" (confidentiality provision).

On October 1, 2016, EGO and Premier entered into a written addendum to the Premier billing services agreement, pursuant to which EGO agreed to provide services to Premier at two additional facilities.

Premier and EGO's business relationship eventually deteriorated, resulting in the complaint and cross-complaint at issue on appeal.

Meanwhile, on January 14, 2020, Cardillo, on behalf of Glendale Adventist, advised EGO that Glendale Adventist was terminating its billing services agreement with EGO.

3

B.    *Premier's Complaint*

On March 19, 2020, Premier filed a complaint against EGO alleging causes of action for:  (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) intentional interference with prospective economic relations; (4) negligent interference with prospective economic relations; (5) breach of fiduciary duties; (6) negligence; (7) extortion; and (8) violations of Business and Professions Code section 17200.

We summarize here the factual allegations in the complaint.  On November 19, 2018, Cardillo provided notice to EGO that in December 2018, Premier would be terminating its affiliation with Lompoc Valley Medical Center, at which EGO had previously provided services to Premier.  EGO nonetheless continued to provide billing services at Lompoc Valley Medical Center, on Premier's behalf.  Premier thereby became obligated to return erroneous reimbursements to insurers and governmental entities, which caused  Premier to experience cash flow issues.  Because of these cash flow issues, Premier fell behind in paying EGO, which threatened that if Premier did not pay the outstanding invoice, EGO would report Premier to the Department of Justice and other regulatory agencies and terminate EGO's services.  In October 2019, EGO terminated the Premier billing services agreement.

Premier then transitioned the billing services responsibilities at Palo Verde Hospital, at which EGO had previously provided services, to LogixHealth, another billing services provider.  When LogixHealth assumed coding and billing responsibilities at Palo Verde Hospital, it discovered and highlighted significant and detrimental errors by EGO.

Specifically, LogixHealth discovered that EGO had not filed certain applications to satisfy the requirements for Arizona Medicaid reimbursement and failed to re-enroll numerous Premier physicians for reimbursement by a Riverside county services fund.

## C. *EGO's Cross-Complaint*

On June 17, 2020, EGO filed a cross-complaint against Premier, Cardillo, and Glendale Adventist. In its introductory paragraphs, EGO alleged that Premier had been in arrears on its account with EGO and "[r]ather than paying the debt [Premier] owes, [ ] Cardillo had undertaken a coordinated campaign to retaliate against [EGO] and gain leverage to reduce its debt, including by filing its meritless Complaint in this matter and causing [Glendale Adventist], which he also controls, to terminate its contract with [EGO]."[2] The cross-complaint alleged the following causes of action: (1) breach of contract against Premier; (2) account stated against Premier; (3) quantum meruit against Premier; (4) intentional interference with contractual relations against Cardillo; and (5) breach of the implied covenant of good faith and fair dealing against Glendale Adventist. Only the first and fourth causes of action were the subjects of Premier and Cardillo's anti-SLAPP motions.

---

[2] EGO's reference to the "meritless" complaint did not otherwise support a claim for relief and is the type of "merely incidental" or "collateral" allegation that is not subject to an anti-SLAPP motion. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 (*Baral*).)

5

In its breach of contract cause of action, EGO alleged that Premier breached the Premier billing services agreement in three ways. The third alleged breach (breach of confidentiality cause of action) is the only one relevant for purposes of this appeal. EGO alleged that "based on the allegations of its Complaint in this matter, [Premier] appears to have disclosed Confidential Information acquired from [EGO] to a third party, its current billing services provider, without authorization and for a purpose not contemplated by the parties' agreement. Such Confidential Information may include [EGO's] methods, data, formulae, trade secrets, and/or other intellectual property, financial statements, records and information, pricing strategies, and other business information."

In its intentional interference with contractual relations cause of action, EGO alleged that Cardillo, who knew of the Glendale Adventist billing services agreement, "interfered with [EGO's] contractual relations with Glendale Adventist to retaliate and punish [EGO] for terminating [the Premier billing services agreement] and gain leverage regarding the debt owed to [EGO]."

D.    *Special Motions to Strike*

Premier and Cardillo responded to the cross-complaint by filing special motions to strike pursuant to section 425.16. Premier moved to strike the breach of confidentiality cause of action contending that it arose from Premier's filing of its complaint in this matter and thus was protected activity within the meaning of section 425.16, subdivision (e)(2) and (e)(4). Premier noted that a prevailing party is entitled to attorney fees

6

and costs and advised the court that it "will seek its attorneys' fees and costs by separate motion if its motion is granted."

Cardillo's motion sought to strike the entirety of the cross-complaint's cause of action for intentional interference with contractual relations. In support of that motion, Cardillo submitted a declaration stating, among other things, that in or around January 2020, he was "anticipating legal action" by Premier against EGO. Based on his roles as the CFO and managing partner at Glendale Adventist, he "believed that [he] had a fiduciary obligation to [his] partners to inform them of the impending legal action against EGO and to discuss with them how such legal action might affect [Glendale Adventist]. Accordingly, [he] discussed with other [Glendale Adventist] managing partners the issues [he] had been experiencing with EGO's services in connection with [his] role as CEO and President of Premier, among other general business considerations surrounding the [Glendale Adventist billing agreement]." He added, "[u]ltimately, [Glendale Adventist] decided, by vote of all partners, not to renew its agreement with EGO for an additional term." In Cardillo's view, the intentional interference with contractual relations cause of action therefore arose from protected activity within the meaning of section 425.16, subdivisions (e)(2) and (e)(4). Finally, Cardillo advised the court that he "will seek his attorneys' fees and costs by separate motion if his motion is granted."

EGO opposed both motions, disputing that the challenged causes of action arose from protected activity and contending that both had minimal merit.

E.    *Trial Court's Ruling*

On December 10, 2020, the trial court conducted a hearing on the anti-SLAPP motions.  Although a court reporter was present, the record on appeal does not include a reporter's transcript of the hearing.  Following the hearing, the court issued a written minute order denying the motions to strike.  The court concluded that Premier and Cardillo had failed to demonstrate that the causes of action arose from protected conduct.  Thus, the court did not consider whether the causes of action had minimal merit.  The court neither discussed nor awarded any attorney fees in connection with the motion.

Premier and Cardillo timely filed their notices of appeal.

## III.  DISCUSSION

Premier and Cardillo contend that the trial court erred in denying their anti-SLAPP motions because they each met their prima facie burden of demonstrating that the relevant causes of action arose from protected activity.  We disagree.

A.    *Applicable Law*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.  [Citation.]  The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of

8

constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056; § 425.16, subd. (b)(1).) "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral, supra,* 1 Cal.5th at p. 384.)

At the first step, "[t]he moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).)" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"'The right to petition for redress of grievances is the right to complain about and complain to the government.' [Citation.]

9

'The right includes the right to petition the executive or legislative branches directly' and also encompasses 'the right to petition the judicial branch for resolution of legal disputes.' [Citation.]" (*Chorn v. Workers' Comp. Appeals Bd.* (2016) 245 Cal.App.4th 1370, 1385.) "The constitutional right of petition encompasses ""the basic act of filing litigation."" [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90.)

"We determine de novo whether any of the acts from which challenged claims arise are protected under these provisions. (*Wilson*[ *v. Cable News Network, Inc.* (2019)] 7 Cal.5th [871,] 884.)" (*Bonni*, *supra*, 11 Cal.5th at p. 1009.) "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

B.      *Breach of Contract Claim Against Premier*

We first consider whether EGO's breach of confidentiality cause of action arose from petitioning activity. Premier interprets EGO's allegation that "'based on the allegations of its [c]omplaint in this matter, [Premier] appears to have disclosed Confidential Information acquired from [EGO] to a third party" to mean that *the complaint* "supposedly 'disclosed Confidential Information acquired from [EGO] to a third party, its current billing services provider.'" (Original italics omitted.) That, however, is an unreasonable interpretation of the cross-complaint. If EGO had intended to allege that Premier disclosed confidential information in the complaint, it would have said so directly without adding the otherwise unnecessary allegation that the disclosure was specifically "'to a third party, its current

10

billing services provider.'"  Further, Premier's complaint does not reference any confidential information such as "[EGO's] methods, data, formulae, trade secrets, and/or other intellectual property, financial statements, records and information, pricing strategies, and other business information."  Thus, the only reasonable interpretation of EGO's breach of confidentiality cause of action is that the term "based on" means "from" rather than "through" such that the allegation should properly be read to state:  "[From] the allegations of its Complaint in this matter, [Premier] appears to have disclosed Confidential Information acquired from [EGO] to a third party, its current billing services provider . . . ."  We thus agree with the trial court that the conduct at issue in the breach of confidentiality cause of action is not the type protected by the anti-SLAPP statute.

C.    *Intentional Interference with Contractual Relations Against Cardillo*

Cardillo contends that EGO's intentional interference with contractual relations cause of action "'arises from'" conduct that is "protected activity" under section 425.16, subdivision (e)(2) and (e)(4).  In Cardillo's view, his "communications with other [Glendale Adventist] partners and directors regarding the impending legal action [he] planned to file on behalf of Premier against EGO and the bases for that pending litigation are what led to the [Glendale Adventist] partners' decision to not renew the [Glendale Adventist billing services agreement]. . . .  But for those communications, EGO would not have a basis for its claim."

As an initial matter, Cardillo's declaration does not expressly state that he advised his partners about Premier's

11

plans to file the complaint against EGO. Rather, Cardillo declared that he "believed" that he had a fiduciary obligation to inform his partners about Premier's impending legal action against EGO and how such legal action might affect Glendale Adventist. Cardillo did not declare that he actually advised the managing partners of Glendale Adventist about the pending lawsuit or how the lawsuit would affect Glendale Adventist. He declared only that: "Accordingly, [he] discussed with other [Glendale Adventist] managing partners the issues [he] had been experiencing with EGO's services in connection with [his] role as CEO and President of Premier, among other general business considerations surrounding the [Glendale Adventist billing services agreement]." This discussion preceded Glendale Adventist's vote to not renew its agreement with EGO.

Even assuming, however, that we construe Cardillo's declaration as stating that he advised Glendale Adventist's other managing partners about Premier's plans to file a complaint against EGO, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.)

Here, the act for which liability is asserted is not Cardillo's advising his fellow managing partners about Premier's plans to file a lawsuit, but Cardillo's conduct in "us[ing] his authority as Managing Partner to terminate the [Glendale Adventist billing services agreement]." Thus, the conduct alleged to give rise to

12

liability in this case is not protected speech or petitioning activity and is not protected by the anti-SLAPP statute.

D.    *Attorney Fees*

Premier and Cardillo both contend that they are entitled to attorney fees because they should have prevailed on their anti-SLAPP motions.  Not only did the trial court not err in denying the anti-SLAPP motions, but the record before us does not include any request for attorney fees or ruling on such a request. Premier and Cardillo's arguments are meritless.

## IV.  DISPOSITION

The orders denying the anti-SLAPP motions are affirmed. EGO, Inc. is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.